IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MONET WILLIAMS, TEQUEIRA JOHNSON         )
and NAKIA COLLINS,                        )
                                          )
            Plaintiffs,                   )
                                          )
                                          )   No. 05- 4157 - JLF/CJP
      v.                                  )
                                          )
WALTER WENDLER, individually and in his   )
official capacity as Chancellor, Southern Illinois )
University at Carbondale, TERRY HUFFMAN,   )
individually and in his official capacity as )
Coordinator for Student Judicial Affairs, Southern )
Illinois University at Carbondale, KHAMISI )
GRACE, individually and in her official capacity )
as a Hearing Officer for Student Judicial Affairs, )
Southern Illinois University at Carbondale, )
NANCY HUNTER PEI, individually and in her )
official capacity as assistant to the Vice Chancellor )
for Student Affairs, Southern Illinois University at )
Carbondale, and SOUTHERN ILLINOIS        )
UNIVERSITY,                               )
                                          )
            Defendants.                   )

*FILED*

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
AUG 26 2005
BENTON OFFICE

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiffs, Monet Williams, Tequeira Johnson, and Nakia Collins, by

their attorney, Richard J. Whitney, and for their Complaint against the Defendants, Walter

Wendler, Terry Huffman, Khamisi Grace, Nancy Hunter Pei and Southern Illinois University,

state:

## JURISDICTION AND VENUE

This Complaint is brought pursuant to 42 U.S.C. § 1983, the First, Fifth, and Fourteenth

Amendments to the United States Constitution, and "Title VI" of the Civil Rights Act of 1964,

1

42 U.S.C. § 2000d.  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the

aforementioned statutory and constitutional provisions. Plaintiffs further invoke the supplemental

jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider claims arising under state

law. Venue in this Court exists and is proper pursuant to 28 U.S.C. § 1391 (b) and (c) in that

Defendant resides in the Southern District of Illinois and a substantial part of the events and

omissions giving rise to Plaintiff's claim occurred within the Southern District of Illinois.

PARTIES

1. Plaintiff Monet Williams is a citizen of the United States.  At all times relevant to the

events described herein, Ms. Williams was a graduate student at Southern Illinois University in

Carbondale (hereinafter, "SIUC"), and a member of the graduate chapter of Zeta Phi Beta

(hereinafter "Zeta") sorority.

2. Plaintiff Tequeira Johnson is a citizen of the United States.  At all times relevant to the

events described herein, Ms. Johnson was a student at SIUC, and the vice president of the

undergraduate chapter of the Zeta sorority.

3. Plaintiff Nakia Collins is a citizen of the United States.  At all times relevant to the

events described herein, Ms. Collins was a student at SIUC, and the president of the

undergraduate chapter of the Zeta sorority.

4. Defendant Southern Illinois University (also described, for purposes of this lawsuit, as

"SIUC") is a public university, administered by, and conducting its business in the State of

Illinois with offices in Carbondale, Illinois.

5. At all relevant times herein, Defendant Walter Wendler was acting under color of state

law, in his capacity as Chancellor for SIUC, in which capacity he was responsible for overseeing

2

the content and enforcement of policies, rules and regulations governing student conduct and misconduct at SIUC.

6.  At all relevant times herein, Defendant Terry Huffman was acting under color of state law, in his capacity as Coordinator for Student Judicial Affairs for SIUC, in which capacity he was responsible for overseeing the enforcement of the Student Conduct Code governing student misconduct at SIUC, including but not limited to its procedural provisions.

7.  At all relevant times herein, Defendant Khamisi Grace was acting under color of state law, in her capacity as a Hearing Officer for Student Judicial Affairs for SIUC, in which capacity she was responsible for serving as a fair and neutral adjudicator over alleged violations of the Student Conduct Code governing student misconduct at SIUC.

8. At all relevant times herein, Defendant Nancy Hunter Pei was acting under color of state law, in her capacity as  assistant to the Vice Chancellor for Student Affairs at SIUC, in which capacity she was responsible for reviewing appeals of alleged violations of the Student Conduct Code governing student misconduct at SIUC, and ensuring that Student Judicial Affairs' personnel correctly and fairly adhered to the Code's procedural rules.

FACTUAL ALLEGATIONS

9. On or about November 1, 2004, SIUC student Chantal Conley informed Defendant Huffman  that she  had been the victim of hazing by members of the Zeta sorority.  Defendant Huffman directed her to contact SIUC police (also known as the Department of Public Safety at SIUC) about the matter.

10. On November 2, 2004, Ms. Conley filed a formal complaint with the SIUC police alleging that a series of hazing events had taken place at the home of Annette Danner during the

3

nights of October 3 to October 7, 2004, from 11:30 P.M. to 3:00 A.M.

11. Ms. Conley was interviewed by SIUC Detectives Chuck Leonard and David Ross. She told the detectives that she and other persons seeking admission to the Zeta sorority had been paddled with a wooden paddle and otherwise subjected to abuse by a group of nine Zeta members, and subsequently "threatened" by three students whom Ms. Conley said were also pledges to the sorority. Another student, Dominique Winston, later indicated to police that she, too, had been paddled.

12. In fact, there were no student or sorority gatherings of any kind at the home of Annette Danner during the nights of October 3 to October 7, 2004, from 11:30 P.M. to 3:00 A.M. Ms. Danner herself was a graduate student, who intended to and did in fact complete her course of studies in December 2004, and was no longer an active member of the Zetas when the alleged incidents were supposed to have taken place.

13. At the time that she made her allegations of hazing, Ms. Conley was a senior at SIUC. From her freshman year onward, she had been trying to become a member of the Zeta sorority. Her previous applications had been rejected during her freshman, sophomore, and junior years. Her senior year was her last chance to be accepted.

14. At the time of the alleged incidents, the Zeta sorority was not yet free to sign up pledges, a process more formally known as "forming a line." The national sorority sets the window for forming a line. That window had not yet begun. Therefore, as of October 7, 2004, new pledges could not yet be inducted into the SIU chapter of the Zetas, and any such inductions would not have been recognized by the national sorority.

15. However, persons wishing to become members of the Zeta sorority were permitted to

4

fill out applications in September 2004. Also, "informationals" were conducted by the graduate chapter of the Zetas.  At these informationals, prospective members were told in no uncertain terms that the Zetas would not tolerate any hazing activities.

16. Both Ms. Conley and Ms. Winston attended informationals.  They were both fully aware of the Zetas' policy regarding hazing.

17. When rumors of the alleged hazing first surfaced, Dr. Linda Flowers, president of the graduate chapter of the Zetas, immediately set out to investigate.  She obtained statements from a large number of sorority members saying that no hazing activities had been conducted, and no line had been formed.  She also interviewed the six aspirants who were alleged to have been victims of the alleged paddling.

18. In particular, Ms. Conley was interviewed by Dr. Flowers on October 10, 2004.  At that time, she told Dr. Flowers that the line had started on October 3rd and she had become a pledge, but that no hazing activities had actually taken place.

19. The other five alleged victims told Dr. Flowers that not only had there been no hazing activities, but no line had been formed either.

20. After conducting her investigation, Dr. Flowers concluded that no line had been formed, and no hazing events had occurred.  She reported her findings at that time to both the undergraduate and graduate chapters of the Zetas.

21. Ms. Conley subsequently changed her story and returned to Dr. Flowers to make a revised account on October 14, 2004. Later the same day, Ms. Conley brought Ms. Winston to Dr. Flowers in an attempt to corroborate her story. Ms. Conley sat with Ms. Winston while Ms. Winston gave a supposedly corroborating account of the incidents to Dr. Flowers.

5

22. The revised accounts of Ms. Conley and Ms. Winston were provided to the SIUC police, at the latter's request, for their investigation. The police in turn made these documents available to Student Judicial Affairs to be used as evidence in the Plaintiffs' subsequent disciplinary hearings. However, the SIUC police did not request Ms. Conley's conflicting interview of October 10th to be included in the evidence, nor did they request the tapes or transcripts that Dr. Flowers had obtained with the other alleged victims and alleged perpetrators, all of whom denied that these incidents took place. Accordingly, none of these interviews were provided to Student Judicial Affairs or its Hearing Officers for their consideration, or to the Plaintiffs for the preparation of their defense.

23. The various statements provided by Ms. Conley and Ms. Winston to the SIUC police and to Dr. Flowers contained numerous inconsistencies, not only about whether the hazing took place, but as to whether a line had been formed, whether or not the alleged hazing was part of a "pre-pledging" process, the nature of the hazing, the nature and extent of their alleged injuries, whether pictures had been taken of the injuries, who was present during the alleged hazing, whether hazing had continued after October 7, 2004 and other details.

24. The SIUC Police investigation headed by Detective Leonard consisted of taking statements and photographs from Chantal Conley, interviewing Dr. Flowers and selectively requesting tapes and transcripts from her. The SIUC police did not independently seek corroborating medical evidence or independently interview others allegedly involved in the hazing. They did not attempt to determine if any of the Plaintiffs had alibis on the nights in question. They did not seek to interview neighbors to determine if any gatherings had actually taken place at Ms. Danner's house on the nights in question, from 11:30 P.M to 3:00 A.M.

6

25. When Ms. Conley filed her complaint with SIUC police, she submitted photographs to Detective Leonard, consisting of a woman's buttocks, which she claimed to be her own and which she claimed to have been taken by her mother on or about October 9. In addition she submitted four photographs of angry text messages left on her cell phone, apparently dated on or about October 30, 2004. The SIUC police did not independently contact Ms. Conley's mother to authenticate the photos taken of Ms. Conley. As for the text messages, Ms. Conley conceded that she had no idea who sent them.

26. On November 17, 2004, Detective Leonard spoke with Chantal Conley, who then made the allegation that the hazing was continuing and that she wanted the information she had provided submitted to the SIUC Judicial Affairs Office. Detective Leonard requested that Ms. Conley provide another statement concerning her allegation that the hazing was continuing. However, Ms. Conley failed to do so.

27. Detective Leonard took no further action to investigate the matter, except a brief phone call to Ms. Conley on January 28, 2005, in which she indicated she had no further information. However, Detective Leonard did not forward the information provided to him by Chantal Conley to Student Judicial Affairs until March 8, 2005. His police report is dated February 18, 2005, even though it does not indicate any investigative activity beyond the brief phone call on January 28, 2005, and no substantive activity beyond November 17, 2004.

28. On or about March 24, 2005, two of the Plaintiffs and several other members of the Zeta sorority were notified by SIUC Student Judicial Affairs Coordinator Terry Huffman that they had been charged with a violation of the Student Conduct Code, section II.B.11, for hazing. Each Plaintiff elected to contest the charge at an administrative hearing.

7

29. Prior to the hearings of the Plaintiffs, a hearing was held in the case of another Zeta charged with hazing, Lolita Mack. Both Ms. Conley and Ms. Winston showed up to testify against Ms. Mack in that case.  However, their testimonies were so inconsistent that the case against Ms. Mack was dismissed.

30. Although this inconsistent testimony was relevant to the cases against the Plaintiffs, Defendant Huffman destroyed the audio recording of that hearing, and Plaintiffs were thus unable to use it in their defense or in their appeals.  In addition, Defendant Grace failed to take judicial notice of the result in Ms. Mack's case when considering the charges against the three Plaintiffs herein.

31. Either due to a policy or custom or  directive of Defendant Huffman, Plaintiffs were not presented with all the evidence that was to be used against them, prior to their hearing. They were permitted to inspect the SIUC police file of the investigation that had been conducted. However, the photographs and tapes that were referred to in the file were not included with the file and Plaintiffs had no opportunity to listen to the tapes or view the photographs until confronted by them at their respective hearings. Plaintiffs were also denied permission to photocopy the police report and attachments to prepare their defense.

## COUNT I – PLAINTIFF NAKIA COLLINS' CLAIM FOR VIOLATION OF DUE PROCESS AGAINST DEFENDANT HUFFMAN

32.  The allegations set forth in paragraphs 1-31 are incorporated herein by reference.

33. Defendant Huffman was first notified of the allegations of hazing against Plaintiff Collins on or before November 1, 2004. SIUC Police were notified of the allegations of hazing against Plaintiff Collins on November 2, 2004. Yet, Defendant Huffman did not bring charges

8

against Ms. Collins for hazing until on or about March 24, 2005.

34. The SIUC Student Conduct Code (a copy of which is attached to and made a part of this Complaint as Exhibit "A"), provides under section VI.C2 ("Initiation of a Complaint") that: "Any member of the university community or law enforcement agencies may initiate disciplinary proceedings by filing a complaint and/or documentation with Student Judicial Affairs within 20 [business] days of the *discovery of an alleged violation* of the Student Conduct Code. The complaint must be in writing with all available evidence attached." (Emphasis added.)

35. The Code provides no alternative procedure for initiating a complaint.

36. Therefore, in accordance with the Code and the Plaintiff's constitutional due process rights, the charges against Plaintiff Collins should have been barred as being untimely.

37. As the head of Student Judicial Affairs with considerable experience enforcing the Code, Defendant Huffman knew or should have known that the charges against Ms. Collins should have been dropped, but he deliberately allowed them to go forward, in violation of the Code.

38. The failure to bring charges against Plaintiff Collins in a timely manner prejudiced her ability to defend herself against said charges. For example, it made it difficult for her to recall or obtain evidence that she was not at Annette Danner's residence on the nights of October 3 to October 7, 2004, from 11:30 P.M. to 3:00 A.M. Among other things, Ms. Danner herself had graduated and left town, and was not available to testify on that subject.

39. In addition, Defendant Huffman conducted a meeting in late April to determine if there was enough evidence to warrant continuing with the disciplinary proceeding against Ms. Collins. At that time, and by simply reading the police file, Mr. Huffman knew or should have

9

known that Detective Leonard had not conducted a serious or professional investigation of the hazing charges. Yet, he did not order that the charges against Ms. Collins should be dropped because of the failure to investigate properly and ascertain the evidence.

40. Defendant Huffman served as the Hearing Officer at some of the hearings in the hazing cases. In particular, he conducted the hearing in the first hazing case that was tried, being that of Lolita Mack. Defendant Huffman acquitted Ms. Mack because the testimonies of Ms. Conley and Ms. Winston, the two alleged victims of hazing, were hopelessly inconsistent. Yet, he did not instruct Defendant Grace to take judicial note of that fact, when Defendant Grace served as the Hearing Officer in the case against Ms. Collins, even though he was monitoring and supervising this and other hearings. Instead, Defendant Huffman destroyed the tapes showing the contradiction, even though he knew that there were many more hazing hearings still to be conducted.

41. In his supervisory capacity, Defendant Huffman was fully aware, but deliberately failed to correct the fact that, during Plaintiff Collins' hearing, Defendant Grace violated a number of rules and procedures, as set forth in the Student Conduct Code, including but not limited to the following:

a. Allowing Plaintiff Collins to be confronted with a *surprise new charge of harassment* at her hearing, in violation of VI.C3(a) and VI.C3(b) of the Code. Defendant Grace permitted both Ms. Conley and Detective Leonard to testify at length about certain alleged acts of harassment, even though Plaintiff Collins had not even been charged with same. Defendant Grace herself further questioned Plaintiff Collins about these alleged additional incidents, even though there was no evidence connecting Plaintiff Collins to the incidents. Furthermore, evidence was entered into the record, including the four pictures taken from Ms. Conley's cell phone to support her harassment claim. Taken together, this amounted to creating a new charge against Plaintiff Collins either for harassment or for condoning harassment. Although the new charges were not formally brought against Plaintiff Collins, the introduction of such extraneous evidence was prejudicial, painting a picture of Plaintiff Collins and her sorority as being cruel

10

and out-of-control.

   b. Allowing Plaintiff Collins to be confronted with *surprise new evidence* at the hearing, in violation of VI.C3(b) and VI.C4a(1) of the Code.  Not only was Ms. Collins confronted with evidence of harassment, of which she had not been apprised before the hearing, but she was also confronted with previously unknown evidence in the form of the pictures supposedly taken by Ms. Conley's mother and purportedly showing Ms. Conley's bruised buttocks.  None of these pictures had been made available to Plaintiff Collins when she went to Student Judicial Affairs to inspect the evidentiary files the week before the hearings.  Therefore, SIUC's use of these pictures as evidence against Plaintiff Collins was improper.

   c. Allowing Detective Leonard to act as an adviser to the complainant. The Code does not even allow for the complainant to have an adviser; only the student who is charged with a violation is entitled to such. (See VI.C4a(3)).  Furthermore, if Defendant Grace intended to permit Detective Leonard  to act as Ms. Conley's adviser, then she should have forbidden him from testifying, in accordance with VI.C4a(3).  However, Detective Leonard did testify against Plaintiff Collins at considerable length, and he also sat by Ms. Conley throughout the hearing, while she examined the other witnesses.

  42. In addition, and in his supervisory capacity, Defendant Huffman was fully aware, but

deliberately failed to correct the fact that Defendant Grace violated a number of rules that are

implied by the Student Conduct Code.  This resulted in a proceeding that was highly prejudicial

to Plaintiff Collins, and violated her Due Process rights under the Fifth and Fourteenth

Amendments, including but not limited to the following:

   a. Allowing Detective Leonard to further prejudice Plaintiff Collins by improperly testifying as to the good character of Ms. Conley.  Defendant Grace also allowed Detective Leonard to taint the proceedings by telling Defendant Grace that he was sure Plaintiff Collins was guilty, and if Defendant Grace did not find her guilty, he personally would help Ms. Conley initiate a civil suit.

   b. Allowing Defendant Grace to conduct the hearing as if she were a prosecutor; or otherwise biased against Plaintiff Collins and her witnesses.  On the one hand, Defendant Grace asked only leading questions of the complainant, Ms. Conley, and never challenged her answers or asked her to explain inconsistencies in her case.  On the other hand, Defendant Grace cross-examined Ms. Collins and each of her six supporting witnesses, and was argumentative with them.  Among other things, she asked each witness: "Why would Ms. Conley lie?" but never asked Ms. Conley why each of the other witnesses would lie.

11

c. Allowing Defendant Grace to selectively use rules of evidence in favor of Ms. Conley and against Plaintiff Collins. For example, Defendant Grace permitted pictures to be entered into evidence that were not authenticated and had not been made available to Plaintiff Collins prior to the hearing for her review, and Defendant Grace permitted evidence to be presented at the hearing that was not relevant to the charges but highly prejudicial to Plaintiff Collins. On the other hand, Defendant Grace firmly blocked an attempt by Tommy Raeford, the adviser to the undergraduate branch of the Zetas, to present new evidence on Plaintiff Collins' behalf. The Hearing Officer stated that new evidence was not permitted at the hearing, even though she allowed new evidence to be introduced by Ms. Conley, over Plaintiff Collins' express objection.

d. Allowing Defendant Grace improperly to consider Ms. Winston's statement to Dr. Flowers, and the mere fact that she testified at the hearing of Lolita Mack, as support for and corroboration of Ms. Conley's testimony. Ms. Winston did not testify at Plaintiff Collins' hearing, nor was Ms. Winston's statement to Dr. Flowers discussed at Plaintiff Collins' hearing. Consequently, Plaintiff Collins had no opportunity to cross-examine Ms. Winston or otherwise uncover inconsistencies in her testimony. Ms. Winston's views about whether the hazing incident did or did not occur should not have been considered at all in determining whether the preponderance of the evidence supported a finding that Plaintiff Collins was guilty.

e. Allowing Defendant Grace to find Ms. Collins guilty, without stating any reason for her finding. This implicitly violates the guarantee in the Student Code that the convicted student has a right to appeal. See V.C8 and VI.C8, Without knowing the reason for the decision against her, Plaintiff Collins had to guess about what points to raise on appeal.

43. As a direct and proximate consequence of Defendant Huffman's deliberate actions and omissions, as described herein, following the hearing held on April 25, 2005, Plaintiff Collins was found guilty of hazing by Defendant Grace and suspended from SIUC for three years. This suspension was upheld after Plaintiff Collins' appeal to Defendant Pei, by a decision dated June 13, 2005.

44. Defendant Huffman's filing of untimely charges against Plaintiff Collins, and his failure to correct the procedural improprieties occurring at her hearing, as described herein, were committed recklessly, or with callous indifference to Plaintiff's constitutional rights.

45. At the time when the alleged hazing events took place, Plaintiff Collins had been a

12

student at SIUC in good standing for more than two years. She had paid all required tuition and fees and had been provided and promised educational benefits in return, in an ongoing contractual relationship. She was committed to completing her education at SIUC, and the University was committed to providing her with a full and complete undergraduate education. Accordingly, Plaintiff Collins has a vested, protected property interest in her education at SIUC under the Fifth and Fourteenth Amendments to the Constitution of the United States.

46. In suspending Plaintiff Collins for three years, SIUC has damaged her good name, honor and reputation, thereby violating her constitutionally protected liberty interest under the Fifth and Fourteenth Amendments to the Constitution of the United States.

47. In suspending Plaintiff Collins for three years, SIUC has put a hold on her transcript, depriving her of her liberty and property interests in completing her education and making it substantially more difficult for her to obtain gainful and rewarding employment.

48. Accordingly, SIUC, and its officers and agents, should not be entitled to deprive Ms. Collins of the aforesaid liberty and property interests without due process of law.

49. Defendant Huffman's filing of untimely charges against Plaintiff Collins, and his failure to correct the procedural improprieties occurring during her investigation and hearing, as described herein, deprived Plaintiff Collins of the rights secured to her under the Fourteenth Amendment to the Constitution of the United States, in that it deprived her of her property and liberty interests, as described herein, without due process of law.

50. As a direct and proximate consequence of Defendant Huffman's deliberate actions and omissions, as described herein, Plaintiff Collins has suffered injury to her good name, honor and reputation, and has further been injured, in that she has been deprived of the benefits of

13

receiving a higher education, and of the economic benefits that come with the obtaining of a bachelor's degree, for a period of three years.

WHEREFORE the Plaintiff, Nakia Collins, prays that judgment be entered in her favor and that this Court:

A. Enjoin Defendant Huffman to remove the finding that Plaintiff Collins was guilty of hazing, purge her student records of all references to the charges of hazing improperly filed against her, and rescind her suspension and all other sanctions arising from the charges brought against her on or about March 24, 2005;

B. Award compensatory damages from Defendant Huffman in an amount to be determined at trial for the matters alleged in this Complaint;

C. Award punitive damages as provided by law;

D. Award costs of suit incurred;

E. Award reasonable attorney's fees; and

F. Provide such other and further relief as the Court may deem proper.

## COUNT II – PLAINTIFF NAKIA COLLINS' CLAIM FOR VIOLATION OF DUE PROCESS AGAINST DEFENDANT GRACE

51. The allegations set forth in paragraphs 1-31 are incorporated herein by reference.

52. Defendant Grace served as the Hearing Officer who conducted Ms. Collins' hearing. As such, it was Defendant Grace's duty to ensure that Ms. Collins received a fair hearing. It was also Defendant Grace's duty to make an objective assessment of the facts and determine if the preponderance of the evidence demonstrated that Ms. Collins was guilty of hazing on the nights of October 3 to October 7, 2004.

14

53. Instead of acting as a neutral fact-finder, Defendant Grace knowingly and deliberately violated a number of rules and procedures, as set forth in the Student Conduct Code, in a manner that was highly prejudicial to Plaintiff Collins, including but not limited to:

a. Allowing Plaintiff Collins to be confronted with a *surprise new charge of harassment* at her hearing, in violation of VI.C3(a) and VI.C3(b) of the Code. Defendant Grace permitted both Ms. Conley and Detective Leonard to testify at length about certain alleged acts of harassment, even though Plaintiff Collins had not even been charged with same. Defendant Grace herself further questioned Plaintiff Collins about these alleged additional incidents, even though there was no evidence connecting Plaintiff Collins to the incidents. Furthermore, evidence was entered into the record, including the four pictures taken from Ms. Conley's cell phone to support her harassment claim. Taken together, this amounted to creating a new charge against Plaintiff Collins either for harassment or for condoning harassment. Although the new charges were not formally brought against Plaintiff Collins, the introduction of such extraneous evidence was prejudicial, painting a picture of Plaintiff Collins and her sorority as being cruel and out-of-control.

b. Allowing Plaintiff Collins to be confronted with *surprise new evidence* at the hearing, in violation of VI.C3(b) and VI.C4a(1) of the Code. Not only was Ms. Collins confronted with evidence of harassment, of which she had not been apprised before the hearing, but she was also confronted with previously unknown evidence in the form of the pictures supposedly taken by Ms. Conley's mother and purportedly showing Ms. Conley's bruised buttocks. None of these pictures had been made available to Plaintiff Collins when she went to Student Judicial Affairs to inspect the evidentiary files the week before the hearings. Therefore, SIUC's use of these pictures as evidence against Plaintiff Collins was improper.

c. Allowing Detective Leonard to act as an adviser to the complainant. The Code does not even allow for the complainant to have an adviser; only the student who is charged with a violation is entitled to such. (See VI.C4a(3)). Furthermore, if Defendant Grace intended to permit Detective Leonard to act as Ms. Conley's adviser, then she should have forbidden him from testifying, in accordance with VI.C4a(3). However, Detective Leonard did testify against Plaintiff Collins at considerable length, and he also sat by Ms. Conley throughout the hearing, while she examined the other witnesses.

54. Instead of acting as a neutral fact-finder, Defendant Grace knowingly and deliberately violated a number of rules implied by the Student Conduct Code, in a manner that was highly prejudicial to Plaintiff Collins, and violated her Due Process rights under the Fifth and Fourteenth Amendments, including but not limited to the following:

15

a. Allowing Detective Leonard to further prejudice Plaintiff Collins by improperly testifying as to the good character of Ms. Conley. Defendant Grace also allowed Detective Leonard to taint the proceedings by allowing him to testify that he was sure Plaintiff Collins was guilty, and if Defendant Grace did not find her guilty, he personally would help Ms. Conley initiate a civil suit.

b. Conducting the hearing as if she were a prosecutor; or otherwise biased against Plaintiff Collins and her witnesses. On the one hand, Defendant Grace asked only leading questions of the complainant, Ms. Conley, and never challenged her answers or asked her to explain inconsistencies in her case. On the other hand, Defendant Grace cross-examined Ms. Collins and each of her six supporting witnesses, and was argumentative with them. Among other things, she asked each witness: "Why would Ms. Conley lie?" but never asked Ms. Conley why each of the other witnesses would lie.

c. Using rules of evidence selectively in favor of Ms. Conley and against Plaintiff Collins. For example, Defendant Grace permitted pictures to be entered into evidence that were not authenticated and had not been made available to Plaintiff Collins prior to the hearing for her review, and Defendant Grace permitted evidence to be presented at the hearing that was not relevant to the charges but highly prejudicial to Plaintiff Collins. On the other hand, Defendant Grace firmly blocked an attempt by Tommy Raeford, the adviser to the undergraduate branch of the Zetas, to present new evidence on Plaintiff Collins' behalf. The Hearing Officer stated that new evidence was not permitted at the hearing, even though she allowed new evidence to be introduced by Ms. Conley, over Plaintiff Collins' express objection.

d. Improperly considering Ms. Winston's statement to Dr. Flowers, and the mere fact that she testified at the hearing of Lolita Mack, as support for and corroboration of Ms. Conley's testimony. Ms. Winston did not testify at Plaintiff Collins' hearing, nor was Ms. Winston's statement to Dr. Flowers discussed at Plaintiff Collins' hearing. Consequently, Plaintiff Collins had no opportunity to cross-examine Ms. Winston or otherwise uncover inconsistencies in her testimony. Ms. Winston's views about whether the hazing incident did or did not occur should not have been considered at all in determining whether the preponderance of the evidence supported a finding that Plaintiff Collins was guilty.

e. Failing to state any reason for finding Plaintiff Collins guilty. By failing to state her reasoning, Defendant Grace knowingly and deliberately sought to hide the fact that there was no sound basis for her verdict. Defendant Grace fully understood that by failing to state the reason(s) for her decision, she made it practically impossible for Ms. Collins to offer a clearly focused appeal. This, in turn, implicitly violated the guarantee in the Student Code that the convicted student has a right to appeal. (See V.C8 and VI.C8.).

55. Furthermore, Defendant Grace knew or should have known that the properly admitted evidence, which consisted solely of the testimony of one young woman, Ms. Conley, who said

16

the hazing did occur, against seven alleged participants and alleged victims who said it did not occur, was inherently insufficient to justify a conviction.

56. Nevertheless, Defendant Grace found Plaintiff Collins guilty of hazing and suspended her from SIUC for three years. Three years is the maximum possible suspension permitted by the Student Conduct Code.

57. Defendant Grace knew, at the time of the hearing, that Plaintiff Collins had an exemplary record – no past disciplinary charges, good grades, and a record of community service. Defendant Grace also knew that the single factor identified by the Code as important in determining the severity of punishment at a student disciplinary hearing is the student's past disciplinary history. (VI.C6.) Nevertheless, Defendant Grace chose to ignore the rules of procedure and suspend Ms. Collins for the maximum term permitted by the Code.

58. Plaintiff Collins' three-year suspension was upheld after she appealed to Defendant Pei.

59. Defendant Grace's violation of SIUC's own rules regarding the proper way to conduct a hearing, her further attempts to bias the hearing in favor of the complainant and against Plaintiff Collins, and her decision not to follow the sentencing guidelines set forth in the Code, were committed recklessly, or with callous indifference to Plaintiff's constitutional rights.

60. At the time when the alleged hazing events took place, Plaintiff Collins had been a student at SIUC in good standing for more than two years. She had paid all required tuition and fees and had been provided and promised educational benefits in return, in an ongoing contractual relationship. She was committed to completing her education at SIUC, and the University was committed to providing her with a full and complete undergraduate education.

Accordingly, Plaintiff Collins has a vested, protected property interest in her education at SIUC under the Fifth and Fourteenth Amendments to the Constitution of the United States.

61. In suspending Plaintiff Collins for three years, SIUC has damaged Plaintiff Collins' good name, honor and reputation, thereby violating her constitutionally protected liberty interest under the Fifth and Fourteenth Amendments to the Constitution of the United States.

62. In suspending Plaintiff Collins for three years, SIUC has put a hold on Plaintiff Collins' transcript, depriving her of her liberty and property interests in completing her education and making it substantially more difficult for her to obtain gainful and rewarding employment.

63. Accordingly, SIUC, and its officers and agents, should not be entitled to deprive Plaintiff Collins of the aforesaid liberty and property interests without due process of law.

64. Defendant Grace's failure to provide Ms. Collins with a fair hearing deprived Ms. Collins of the rights secured to her under the Fourteenth Amendment to the Constitution of the United States, in that it deprived her of her property and liberty interests, as described herein, without due process of law.

65. As a direct and proximate consequence of Defendant Grace's deliberate actions and omissions, as described herein, Plaintiff Collins has suffered injury to her good name, honor and reputation, and has further been injured, in that she has been deprived of the benefits of receiving a higher education, and of the economic benefits that come with the obtaining of a bachelor's degree, for a period of three years.

WHEREFORE the Plaintiff, Nakia Collins, prays that judgment be entered in her favor and that this Court:

A. Enjoin Defendant Grace to remove the finding that Plaintiff Collins was guilty of

18

hazing, purge her student records of all references to the charges of hazing improperly filed against her, and rescind her suspension and all other sanctions arising from the charges brought against her on or about March 24, 2005;

B. Award compensatory damages from Defendant Grace in an amount to be determined at trial for the matters alleged in this Complaint;

C. Award punitive damages as provided by law;

D. Award costs of suit incurred;

E. Award reasonable attorney's fees; and

F. Provide such other and further relief as the Court may deem proper.

## COUNT III – PLAINTIFF NAKIA COLLINS' CLAIM FOR VIOLATION OF DUE PROCESS
## AGAINST DEFENDANT PEI

66. The allegations set forth in paragraphs 1-31 are incorporated herein by reference.

67. During all times relevant to the charges herein, Defendant Pei served as assistant to the Vice Chancellor at SIUC. In that capacity, it was Defendant Pei's duty to review all disciplinary actions conducted by Student Judicial Affairs, in order to ensure that the disciplinary process was handled fairly and in accordance with all SIUC procedures, including and particularly those set down in the Student Conduct Code. More specifically, Defendant Pei was the reviewer of first instance, to whom Plaintiff Collins directed her appeal of the decision by Defendant Grace.

68. Plaintiff Collins wrote an appeal in which she identified several of the procedural errors presented herein, including the failure to timely file the charge against her. Plaintiff Collins also pointed out that the evidence was grossly insufficient to convict.

19

69. Defendant Pei knew or should have known that Defendant Grace did not provide Plaintiff Collins with any information whatsoever about the reason for her guilty determination, thereby undermining Plaintiff Collins' ability to appeal the basis for that determination.

70. Nevertheless, Defendant Pei did not conduct a fair and open-minded review of Plaintiff Collins appeal to determine if there were procedural errors, or if there was sufficient *admissible* evidence in the record by which a fact-finder could rationally have found Plaintiff Collins guilty.

71. Instead of conducting an honest review of the hearing for possible errors, Defendant Pei merely sought to find rationalizations for the errors Plaintiff Collins pointed out. These rationalizations constituted a deliberate attempt to cover up wrongdoing and bias at Plaintiff Collins' hearing, as committed by Defendant Grace and other SIUC officials. The rationalizations included but were not limited to:

a. Explaining away the untimely filing of the complaint by stating that twenty days from the "discovery of an alleged violation" really means twenty days from the date when the investigation of the violation is complete.

b. Explaining away Detective Leonard's improper attempt to act as Ms. Conley's adviser at the hearing by stating that Detective Leonard was just there to provide security during the hearing, even though Detective Leonard never made any such statement at the hearing, and there was no identified threat, for which he needed to provide security.

c. Acknowledging in the alternative, that Detective Leonard's bias and his advocacy for Ms. Conley may have been procedurally improper, but then stating in a conclusory fashion and without any explanation, that the bias did not affect the outcome of the hearing.

20

d. Merely restating the charges against Plaintiff Collins as her "proof" that the evidence was sufficient.

e. Assuming that Ms. Winston's corroborating testimony was part of the evidence laid out against Plaintiff Collins, even though Ms. Winston's beliefs about the incident were not presented as evidence at Plaintiff Collins' hearing.

f. Evading the question of whether a *three-year* suspension was unduly harsh, given Plaintiff Collins' exemplary record, by simply stating without any other explanation that: "Given the seriousness of the violation, the sanction of disciplinary suspension seems appropriate."

72. In upholding, Defendant Grace's three-year suspension of Plaintiff Collins, Defendant Pei failed to provide a meaningful review of Plaintiff Collins' appeal. Defendant Pei deliberately ignored the many violations of SIUC's own rules that were pointed out by Plaintiff Collins. Defendant Pei also acknowledged the biased nature of the hearing, but then chose to ignore the implications of that bias. Furthermore, Defendant Pei deliberately chose to ignore the fact that the sentence was excessive, in violation of the sentencing guidelines set forth in the Code. Defendant Pei committed all these acts and omissions recklessly, or with callous indifference to Plaintiff's constitutional rights.

73. At the time when the alleged hazing events took place, Plaintiff Collins had been a student at SIUC in good standing for more than two years. She had paid all required tuition and fees and had been provided promised educational benefits in return, in an ongoing contractual relationship. She was committed to completing her education at SIUC, and the University was committed to providing her with a full and complete undergraduate education. Accordingly,

21

Plaintiff Collins has a vested, protected property interest in her education at SIUC under the Fifth and Fourteenth Amendments to the Constitution of the United States.

74. In suspending Ms. Collins for three years, SIUC has damaged Plaintiff Collins' good name, honor and reputation, thereby violating her constitutionally protected liberty interest under the Fifth and Fourteenth Amendments to the Constitution of the United States.

75. In suspending Ms. Collins for three years, SIUC has put a hold on Plaintiff Collins' transcript, depriving her of her liberty and property interests in completing her education and making it substantially more difficult for her to obtain gainful and rewarding employment.

76. Accordingly, SIUC, and its officers and agents, should not be entitled to deprive Plaintiff Collins of the aforesaid liberty and property interests without due process of law.

77. Defendant Pei's failure to provide Plaintiff Collins with a fair administrative review of the results of her hearing deprived Ms. Collins of the rights secured to her under the Fourteenth Amendment to the Constitution of the United States, in that it deprived her of her property and liberty interests, as described herein, without due process of law.

78. As a direct and proximate consequence of Defendant Pei's deliberate actions and omissions, as described herein, Plaintiff Collins has suffered injury to her good name, honor and reputation, and has further been injured, in that she has been deprived of the benefits of receiving a higher education, and of the economic benefits that come with the obtaining of a bachelor's degree, for a period of three years.

WHEREFORE the Plaintiff, Nakia Collins, prays that judgment be entered in her favor and that this Court:

A. Enjoin Defendant Pei to remove the finding that Plaintiff Collins was guilty of hazing,

22

purge her student records of all references to the charges of hazing improperly filed against her, and rescind her suspension and all other sanctions arising from the charges brought against her on or about March 24, 2005;

B. Award compensatory damages from Defendant Pei in an amount to be determined at trial for the matters alleged in this Complaint;

C. Award punitive damages as provided by law;

D. Award costs of suit incurred;

E. Award reasonable attorney's fees; and

F. Provide such other and further relief as the Court may deem proper.

## COUNT IV – PLAINTIFF NAKIA COLLINS' CLAIM FOR RACE DISCRIMINATION UNDER TITLE VI AGAINST DEFENDANT SIUC

79. The allegations set forth in paragraphs 1-31 are incorporated herein by reference.

80. Plaintiff Collins is African-American, or black by race and skin color.

81. Plaintiff Collins is also a member of Zeta Phi Beta, a well-known "black sorority", and a registered student organization (RSO) at SIUC.

82. Defendant SIUC is a recipient of federal financial assistance, and is therefore subject to the anti-discrimination provisions of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d - 2000d-7.

83. Plaintiff Collins was charged with hazing in the Fall of 2004, based upon allegations of paddling made by a single disgruntled student who had been denied admission to the Zetas for three straight years.

84. Various agents and representatives of SIUC acted with prejudice and excessive zeal in

23

pursuing this complaint against Plaintiff Collins, as described in Counts I-III.

85. The investigating officer, Detective Leonard, conducted a biased investigation of the complaint, which consisted primarily of taking the complainant's word for the fact that the hazing occurred, and writing up the complainant's statement as if it were fact.

86. Defendant Huffman decided that the charges should go forward, deliberately ignoring the fact that the charges were untimely, according to the plain language of the Student Conduct Code, which it is his duty to enforce. In allowing the charges to go forward, Defendant Huffman also chose to ignore the fact that Detective Leonard's investigation was grossly inadequate and unprofessional.

87. At Plaintiff Collins' hearing, Defendant Grace acted as a prosecutor, whose sole purpose was to prove Plaintiff Collins' guilt, rather than make an objective determination of fact. Defendant Grace then convicted Plaintiff Collins and sentenced her to a three-year suspension from school, showing no mercy on account of Plaintiff Collins' past good record.

88. The official charged with hearing Plaintiff Collins' appeal, Defendant Pei, did not conduct the review in an open-minded fashion, but instead just sought to find ways to rationalize the biased acts by Defendant Grace and Detective Leonard.

89. All of the acts described in paragraphs 84 through 88 were deliberate.

90. All of the acts described in paragraphs 84 through 88 were committed by agents and employees of Defendant SIUC, in whole or in part due to Plaintiff Collins' race and/or color.

91. By comparison, in the Spring of 2004, a member of the student community who was pledging the fraternity Pi Kappa Alpha, (hereinafter, the "Pikes") died as a result of excessive alcohol consumption and other hazing activities being conducted by the Pikes at that time.

24

92. The Pikes are a fraternity consisting wholly or primarily of Caucasian or white-skinned members.

93. The hazing activities conducted by the Pikes violated the same sections of the Student Conduct Code as the hazing activities alleged to have been conducted by the Zetas.

94. While the Pikes as an organization were charged by the University with hazing and disciplined, no individual member of the Pikes was ever charged with hazing, and no individual member of the Pikes was ever punished for hazing, as a result of the Spring 2004 incident.

95. The hazing activities conducted by the Pikes were more dangerous than the hazing activities allegedly conducted by the Zetas.

96. The reason that various members of the Zeta sorority were charged individually with hazing for the alleged paddling incident in the Fall of 2004, and none of the members of the Pike fraternity were charged with hazing for the alcohol incident is that the persons involved in the former incident were black whereas the persons involved in the latter were white.

97. Thus, Defendant SIUC's conduct in this matter constitutes unlawful discrimination based on race and/or color, in violation of Title VI. Plaintiff Collins was treated differently, disciplined and suspended from school for three years, simply because she is a black.

98. As a direct and proximate consequence of Defendant SIUC's violation of Title VI, Plaintiff Collins has suffered injury to her good name, honor and reputation, and has further been injured, in that she has been deprived of the benefits of receiving a higher education, and of the economic benefits that come with the obtaining of a bachelor's degree, for a period of three years.

WHEREFORE the Plaintiff, Nakia Collins, prays that judgment be entered in her favor

25

and that this Court:

A. Enjoin Defendant SIUC to remove the finding that Plaintiff Collins was guilty of hazing, purge her student records of all references to the charges of hazing improperly filed against her, and rescind her suspension and all other sanctions arising from the charges brought against her on or about March 24, 2005;

B. Award compensatory damages from the University in an amount to be determined at trial for the matters alleged in this Complaint;

C. Award punitive damages as provided by law;

D. Award costs of suit incurred;

E. Award reasonable attorney's fees; and

F. Provide such other and further relief as the Court may deem proper.

## COUNT V – PLAINTIFF NAKIA COLLINS' CLAIM FOR BREACH OF CONTRACT AGAINST DEFENDANT SIUC

99. The allegations set forth in paragraphs 1-31 are incorporated herein by reference.

100. Defendant SIUC is engaged in the trade of providing higher education and awarding baccalaureate, masters, and doctoral degrees to consumers (students) who meet the requisite academic standards and pay the appropriate tuition costs and fees.

101. In the summer of 2004, and again in the winter of 2004-2005, Plaintiff Collins paid the appropriate costs and fees to the University. In so doing, she entered into a contract with Defendant SIUC.

102. The terms of the contract between Plaintiff Collins and SIUC include the rules and procedures promulgated by SIUC, including those contained in the Student Conduct Code. By

26

entering into a contract, both Plaintiff Collins and SIUC promised and agreed to abide by the terms of the Code.

103. In the Spring of 2005, the University brought charges against Plaintiff Collins for a hazing incident that was alleged to have occurred on the nights of October 3rd to October 7th, 2004.

104. The alleged incident was brought to Defendant SIUC's attention, through its agents and representatives, on or before November 1, 2004.

105. As part of its contract with Plaintiff Collins, Defendant SIUC had a duty to investigate the incident promptly, taking no more than 20 business days as provided for in the Student Conduct Code, and then to bring charges promptly, if there was sufficient cause to do so. SIUC breached this term of the contract by waiting more than four months to complete its investigation, and file charges against Plaintiff Collins.

106. At Plaintiff Collins' disciplinary hearing, Defendant SIUC, through its agents and representatives, violated more of its own rules, as set forth in the Student Conduct Code. These violations include but are not limited to:

> A. SIUC introduced and discussed a new charge at the hearing, of which the Plaintiff had not been apprised prior to the hearing.
>
> B. SIUC introduced a number of pieces of new evidence at the hearing, of which the Plaintiff had not been apprised prior to the hearing.
>
> C. The investigating police officer, Detective Leonard, acted as a personal adviser and character witness for Plaintiff Collins' accuser, Ms. Conley, while at the same time falsely claiming to provide an objective and even-handed investigatory report about the alleged incident.

107. SIUC's breaches of contract, as described in paragraphs 106 and 107 herein were

27

material, in that if SIUC had not broken its own rules, as set forth in the Code, Plaintiff Collins would not have been convicted of hazing, and would not now face a three-year suspension.

108. Furthermore, as part of any contract, there is an implied warranty of good faith and fair dealing. In addition to the specific rules of the Student Conduct Code which SIUC was required to follow, SIUC was also required to enforce the Code with good faith, in a fair and even-handed way.

109. More specifically, when a charge of violation of the Student Conduct Code is brought by one student against another, SIUC officials have an implied contractual duty not to take sides in the dispute, but rather to seek to uncover the truth of the matter in an objective fashion.

110. The University breached its implied duty of good faith and fair dealing by failing to provide a fair or even-handed investigation of this case, violating the most rudimentary principles of fairness, and conducting its investigation and disciplinary hearings in an adversarial manner against Plaintiff Collins. These violations of basic fairness by the University include but are not limited to:

> A. The investigating officer merely took Ms. Conley's word that a violation had occurred, and did not make any attempt to conduct an actual investigation into the incident.
>
> B. The investigating officer made an extremely biased presentation at Plaintiff Collins' hearing.
>
> C. The Hearing Officer acted as a prosecutor at the hearings, rather than as a neutral fact-finder.
>
> D. The Hearing Officer used inadmissible evidence and/or facts not even entered into evidence at the hearing, in order to justify the conviction.

28

> E. On appeal, various SIUC officials made up illogical and bad-faith excuses for the violations that occurred, rather than simply admit that the hearing had not been fair.

111. Defendant SIUC also violated its duty of good faith and fair dealing because the evidence in the case was clearly insufficient for any rational person to uphold a conviction.

113. Defendant SIUC further violated its duty of good faith and fair dealing because the collective results of all the disciplinary hearings involving the Zetas were arbitrary and capricious. The University first acquitted Ms. Lolita Mack on charges that were essentially identical with the charges against Plaintiff Collins. The only perceptible difference between the cases is that the supposedly corroborating witness, Ms. Winston, actually testified at Ms. Mack's hearing but did not testify at Plaintiff Collins' hearing.

113. In sum, Defendant SIUC's behavior showed that its purpose in Plaintiff Collins' case was to obtain a conviction, rather than to learn the truth about whether Plaintiff Collins or the Zetas actually committed any acts of hazing.

114. Defendant SIUC's lack of good-faith enforcement of the rules, together with its specific breach of many of its rules in Plaintiff Collins' case, constituted a breach of contract with Plaintiff Collins.

115. As a direct and proximate consequence of Defendant SIUC's breach of contract, Plaintiff Collins has suffered injury to her good name, honor and reputation, and has further been injured, in that she has been deprived of the benefits of receiving a higher education, and of the economic benefits that come with the obtaining of a bachelor's degree, for a period of three years.

WHEREFORE the Plaintiff, Nakia Collins, prays that judgment be entered in her favor

29

and that this Court:

A. Enjoin Defendant SIUC to remove the finding that Plaintiff Collins was guilty of hazing, purge her student records of all references to the charges of hazing improperly filed against her, and rescind her suspension and all other sanctions arising from the charges brought against her on or about March 24, 2005;

B. Award compensatory damages from Defendant SIUC in an amount to be determined at trial for the matters alleged in this Complaint;

C. Award consequential damages from Defendant SIUC.

D. Award punitive damages as provided by law;

E. Award costs of suit incurred;

F. Provide such other and further relief as the Court may deem proper.

## COUNT VI – PLAINTIFF TEQEIRA JOHNSON'S CLAIM FOR VIOLATION OF DUE PROCESS AGAINST DEFENDANT HUFFMAN

116. The allegations set forth in paragraphs 1-31 are incorporated herein by reference.

117. Defendant Huffman was first notified of the allegations of hazing against Plaintiff Johnson on or before November 1, 2004. SIUC police were notified of the allegations of hazing against Plaintiff Johnson on November 2, 2004. Yet, Defendant Huffman did not bring charges against Ms. Johnson for hazing until on or about March 24, 2005.

118. The SIUC Student Conduct Code provides under section VI.C2 ("Initiation of a Complaint") that: "Any member of the university community or law enforcement agencies may initiate disciplinary proceedings by filing a complaint and/or documentation with Student Judicial Affairs within 20 [business] days of the *discovery of an alleged violation* of the Student

30