**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MONET WILLIAMS, et al.,**       ) | |
| ) | |
| **Plaintiffs,**          ) | |
| ) | |
| vs.                               ) | |
| ) Case No. 05-4157-JLF |
| **WALTER WENDLER, et al.,**      ) | |
| ) | |
| **Defendants.**          ) | |

**MEMORANDUM AND ORDER**

**FOREMAN, District Judge:**

Before the Court is plaintiffs' motion for temporary restraining order (Doc. 4). On September 12, 2005, the Court conducted a hearing. Plaintiffs' motion is discussed below.

**I.     Background.**

Plaintiffs Monet Williams, Tequeira Johnson, and Nakia Collins, were found guilty of hazing while they were students at Southern Illinois University in Carbondale, Illinois (SIU). Specifically, on or about March 24, 2005, each plaintiff received a written notice that they had been charged with hazing. This hazing allegedly occurred from October 3 through October 7, 2004, in connection with their sorority, Zeta Phi Beta. In late April and early May, 2005, each plaintiff had an administrative hearing. Specifically, on April 25, 2005, plaintiff Nakia Collins had an administrative hearing where her adviser, Ms. Tommie Raeford, was present and where Ms. Collins presented six witnesses on her behalf. On April 29, and May 3, 2005, respectively, plaintiffs Johnson and Williams each had a similar hearing, again with adviser Raeford present. At the hearings, plaintiffs claimed that they did not engage in hazing and that they were innocent of the charges.

After the hearings, their Hearing Officer for Student Judicial Affairs, Ms. Khamisi Grace, found each of the plaintiffs guilty. Specifically, Ms. Grace issued a Decision Of Hearings form which stated that plaintiffs were guilty based upon a "preponderance of the evidence and the testimony presented." *(See Doc. 8, Plaintiffs' Exh. A)*. Ms. Grace issued each plaintiff a disciplinary suspension for three years.

Each plaintiff appealed the decision to the Vice Chancellor for Student Affairs, Nancy Hunter Pei. On appeal, Ms. Pei upheld each of the plaintiffs' suspensions. Plaintiffs then appealed the decision to the Chancellor's Advisory Review Board. The Chancellor's Advisory Review Board consists of five (5) individual members, and as its name suggests, serves as an advisory board to the SIU Chancellor, Walter Wendler. In each case, the Chancellor's Advisory Review Board advised Chancellor Wendler to uphold plaintiffs' suspensions. Chancellor Wendler upheld the suspensions but reduced graduate student Monet Williams' suspension to two years.

Plaintiffs have brought suit alleging that they were denied due process during both the administrative hearings and during the appeal process. Specifically, plaintiffs allege, among other things, that they were charged with hazing four (4) months after it allegedly occurred, (rather than within 20 days as mandated by the SIU Student Conduct Code), that defendant Terry Huffman destroyed an audiotape from a related hearing that contained inconsistent victim testimony that led to a dismissal of charges, and that Hearing Officer Grace was biased in favor of the victims and improperly admitted and excluded evidence. As such, plaintiffs have sued defendants Huffman, Grace, and Pei for violations of due

process and breach of contract, (Counts I, II, III, V, VI, VII, VIII, X, XI, XII, XIII, XVII). Plaintiffs have also brought claims of racial discrimination against SIU on the ground that defendants failed to find guilty members of a white fraternity, (the Pikes), for also engaging in hazing, (Counts IV, IX, XVI). Finally, Ms. Monet Williams has sued Chancellor Wendler for violations of her due process and freedom of association rights (Counts XIV, XV).

**II.    Discussion.**

  **A.    Elements Required for Injunctive Relief.**

To obtain injunctive relief, plaintiffs must show: (1) a likelihood of success on the merits; (2) that there is no adequate remedy at law; and (3) that they will suffer irreparable harm if the relief is not granted. *See e.g., Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005) (elements for preliminary injunctive relief); *see also FoodComm International v. Barry*, 328 F.3d 300, 303 (7th Cir.2003) (*citing Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir.2002) and *Abbott Labs. v. Mead Johnson & Company*, 971 F.2d 6, 11 (7th Cir.1992)). If these three conditions are met, the Court must then balance the harm to plaintiffs if the temporary restraining order (TRO) is not issued against the harm to the defendants if the TRO is granted. *Incredible Technologies*, 400 F.3d at 1011. Lastly, this Court must consider the "consequences to the public" from denying or granting the TRO. *Promatek*, 300 F.3d at 811.

A temporary restraining order, however, is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1992) (*per curiam*) (*quoting* 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §2948, pp. 129-130 (2d ed.1995)). It

should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek,* 520 U.S. at 972 (*quotation omitted*). Indeed, motions for temporary restraining orders are "extraordinary and drastic," and should be granted only where the moving party has made a clear showing of need. *Appenheimer v. School Board of Washington Community School District 308*, No. 01-1226, 2001 WL 1885834, at *3 (C.D.Ill. May 24, 2001) (*citation omitted*). Although plaintiffs are not required to show a substantial likelihood of success on the merits, they are required to show "some" likelihood of success.

### 1. Likelihood of Success on the Merits.

As noted, plaintiffs have brought counts alleging racial discrimination, breach of contract, violation of freedom of association, and violations of due process. Although plaintiffs' allegations regarding due process appear to mainly support claims of procedural due process, plaintiffs' pleadings state that they have also pled a loss of substantive due process (See Doc. 3, p.4, line 1). As such, the Court assumes that plaintiffs are alleging both substantive and procedural due process claims, and both types of claims are discussed below.

#### a) Substantive Due Process.

Substantive due process, as opposed to procedural due process, is concerned with the "results" of government action. *Gauder v. Leckrone*, 366 F.Supp.2d 780, 786 (W.D. Wis. 2005) (*citing Miller v. Henman*, 804 F.2d 421, 427 (7th Cir.1986)). "Rather than guaranteeing an individual the right to a fair decision making procedure, the concept of substantive due process prevents the state from taking certain actions even

if it provides procedural safeguards." In other words, it protects citizens from government conduct that is "arbitrary or without reasonable justification." *Gauder,* 366 F.Supp.2d at 786 (*citing Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir.2005)).

The United States Court of Appeals for the Seventh Circuit has noted that the scope of substantive due process is "very limited." *Tun,* 398 F.3d at 902 (*citing Washington v. Glucksberg*, 521 U.S. 702 (1997)). It is most often described as an abuse of government power which "shocks the conscience." *Tun*, 398 F.3d at 902 (*citing Rochin v. California*, 342 U.S. 165 (1952)). Indeed, to allege a substantive due process violation, plaintiffs must allege conduct that "shocks the conscience" because it is unjustifiable by "'any governmental interest.'" *Remer v. Burlington Area School District*, 286 F.3d 1007, 1013 (7th Cir.2002) (*citing Dunn,* 158 F.3d at 965)).

Here, plaintiffs were charged with hazing, and although they allege that their hearings were procedurally defective, (an issue that is discussed below), they each did receive a disciplinary hearing by the SIU Student Judicial Affairs Office. Furthermore, again, although plaintiffs allege procedural deficiencies during the appeals process, each of the plaintiffs were allowed to appeal the decision of Student Judicial Affairs, and they each received the benefit of the University's appeals process which in effect, provided them with a three-tiered review.

Plaintiffs claim that the evidence at their administrative hearings was fabricated and that they are actually innocent of the hazing charges. The United States Supreme Court has noted, however, that federal courts are "not in the business of setting aside

5

every erroneous decision made by school administrators." *Wood v. Strickland*, 420 U.S. 308 (1975). Clearly, 42 U.S.C. § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. *Tun*, 398 F.3d at 899. In this case, plaintiffs have neither alleged nor shown conduct by defendants that "shocks the conscience" or is "'unjustifiable by any governmental interest.'" Under the circumstances of this case, plaintiffs have failed to show a reasonable likelihood of succeeding on their substantive due process claims. *See e.g.*, *Wood v. Strickland*, 420 U.S. 308 (1975) (no substantive due process claim even though two high school girls claimed there was no evidence on which to base the disciplinary action when they were expelled for spiking the punch at a school event); *see also Bd. of Educ. of Rogers, Ark. v. McCluskey*, 458 U.S. 966, 970 (1982) (student's expulsion from school for drunkenness was not a substantive due process violation even though school's rules failed to explicitly prohibit alcohol among the drugs that could not be possessed on school grounds).

### b) Procedural Due Process.

The purpose of procedural due process is to guarantee individuals "fair decision making processes" before state actors deprive them of life, liberty or property. "It is unconcerned with outcomes; as long as fair decision making processes are offered, procedural due process has been provided." *Gauder,* 366 F.Supp.2d at 789.

Plaintiffs' procedural due process claims are subject to a two-part inquiry. First, this Court must determine whether plaintiffs were deprived of a protected interest. *Pugel*

*v. Board of Trustees of the University of Illinois*, 378 F.3d 659, 662 (7th Cir.2004). Second, assuming that plaintiffs were deprived of a protected interest, the Court must determine "what process is due." *Pugel*, 378 F.3d at 662 (*citations omitted*). Here, plaintiffs allege two protected interests: 1) a property interest in continuing their college education, and 2) a liberty interest in their good name, honor and reputation.

Initially, the Court notes that it is an "open question in this circuit as to whether a college or university student has a property interest in enrollment that is protected by the Due Process Clause." *Pugel*, 378 F.3d at 662 n.2 (*citations omitted*). Assuming without deciding, however, that plaintiffs were deprived of a protected interest, this Court proceeds to determine whether plaintiffs were denied adequate procedural protections.

"The hallmarks of procedural due process are notice and an opportunity to be heard." *Pugel*, 378 F.3d at 662-63 (*citing Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Procedural due process is a "flexible concept" that "calls for such procedural protections as the particular situation demands." *Pugel*, 378 F.3d at 663 (*citing Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (*quoting Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). To assess whether the procedural protections in a given situation are adequate, this Court is to consider: "'[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.'" *Pugel*, 378 F.3d at 663

(*citing Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (*quoting Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Here, two plaintiffs have been suspended for three years and one plaintiff has been suspended for two years. Again, assuming that plaintiffs were deprived of a protected interest, these deprivations are significant. Plaintiffs, however, were afforded a significant amount of process. Each plaintiff received written notice of the charges against them. (*See e.g., Doc. 8, Defendants'. Exh. 1*). As noted, each plaintiff received a hearing before a Student Judicial Affairs Hearing Officer. At this hearing, plaintiffs were entitled to, and had, an adviser present. They were also allowed to present witnesses and to introduce evidence on their behalf. Indeed, the first plaintiff to have a hearing was Nakia Collins who presented six witnesses on her behalf. (Doc. 1, p.16). Furthermore, plaintiffs were given notice of the Hearing Officer's decision and of the opportunity to appeal the decision. Each plaintiff was afforded the opportunity to appeal the decision and did so. After appealing, plaintiffs were given written notice of Ms. Pei's decision and of the opportunity to appeal the decision further to the Chancellor's Advisory Review Board. Each plaintiff was afforded the opportunity to appeal further and to have the decision ultimately reviewed by Chancellor Wendler himself.

Plaintiffs allege that when bringing the charges and when conducting the hearings, defendants violated the SIU Student Conduct Code (Code)**.** Specifically, plaintiffs allege that it took four (4) months rather than twenty (20) days as per the Code for defendants to bring the charges**.** Plaintiffs also allege that defendants Huffman and Grace violated the Code

when conducting the hearings by allowing Detective Leonard to act as an adviser to the complainant, and by confronting plaintiffs with new evidence and a new charge of harassment, all in violation of the Code's sections VI.C3 and VI.C4. Plaintiffs further allege that defendants violated rules that are "implied" by the Code by allowing detective Leonard to testify as to the complainant's good character, allowing Hearing Officer Khamisi to ask leading questions of the complainant and to selectively apply rules of evidence. Plaintiffs also allege that defendant Nancy Hunter Pei failed to conduct an appellate review that was fair and open-minded. Specifically, plaintiffs allege that Ms. Pei failed to conduct an "honest" appellate review for possible errors, and merely rationalized and "explained away" defendant Huffman's and Grace's failures to follow the Student Conduct Code.

The Court notes, however, that a failure to impose discipline in compliance with a state university's written disciplinary code does not violate the Fourteenth Amendment. *Gauder*, 366 F.Supp.2d at 790 (*citing Martin v. Shawano-Gresham School Dist.*, 395 F.3d 701, 706-07 (7th Cir. 2002); *Hill v. Trustees of Indiana University*, 537 F. 2d 248, 252 (7th Cir. 1976)). "This is a specific application of the general principle that a state's failure to follow its own procedures does not necessarily violate due process." *Gauder*, 366 F.Supp.2d at 790 (*citing Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir.1993) ("a violation of state law . . . is not a denial of due process, even if the state law confers a procedural right")) (*other citations omitted*)). In other words, "federal law defines the requirements of due process in a given situation, not state law." *Gauder*, 366 F.Supp.2d

at 791 (*citing Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985)). Accordingly, plaintiffs' allegations in this regard do not support a procedural due process claim.

Plaintiffs allege that defendant Huffman violated their due process rights by putting an administrative hold on their transcripts thereby preventing them from obtaining copies to submit to other colleges. At the hearing, however, defendant Huffman testified that the Student Judicial Affairs Office had not put a disciplinary hold on plaintiffs' transcripts. Defendant Huffman explained that there may be an "administrative" hold on plaintiffs' transcripts due to, for example, a possible failure to pay an amount owed to the University. He clearly testified that his office did not put a disciplinary hold on plaintiffs' transcripts. Plaintiffs did not refute this testimony.

In addition, defendant Huffman testified that plaintiffs were suspended from attending only SIU, and that nothing in their disciplinary suspensions prohibited them from attending other colleges and universities. In fact, one plaintiff, Nakia Collins, testified that she was currently taking classes at John A. Logan College, Carterville, Illinois.

Plaintiffs also allege that defendant Huffman violated their due process rights by destroying an audiotape from a previous disciplinary hearing. Specifically, another student, Lolita Mack, had also been charged with hazing in connection with the same incidents as plaintiffs. Plaintiffs allege that the charges against Ms. Mack were ultimately dismissed because testimony of the two alleged victims was "hopelessly

**10**

inconsistent." Plaintiffs alleged that defendant Huffman violated their due process rights by destroying the audiotape of Ms. Mack's hearing even though he knew that other hazing hearings were yet to be conducted.

At the Court's hearing, however, defendants denied plaintiffs' assertions that the charges against Ms. Mack were dismissed because the victims' testimony was inconsistent. Further, defendant Huffman testified that the reasons that he did not retain a copy of the tape was that at the end of Ms. Mack's hearing he asked Ms. Mack whether she needed a copy of the tape and she responded that it was not necessary.

Finally, plaintiff cites *Levenstein v. Salafsky*, 164 F.3d 345, 351-52 (7th Cir.1998) for the proposition that plaintiffs claims were viable because the procedures were a sham. Here, however, plaintiffs' complaint admits that they received written notice, that they received a hearing, and that they received two appeals. The complaint further admits that at the first hearing, for example, Nakia Collins was allowed to present six (6) witnesses to corroborate her claim of innocence. "Due process did not entitle [plaintiffs] to a favorable result based on this testimony, only to a meaningful opportunity to present it." *Pugel*, 378 F.3d at 666. It is clear from the complaint that plaintiffs had a hearing where they were questioned, were allowed to present evidence, and given an opportunity to present their side of the story. As noted in *Pugel*, "[d]ue process does not require decisionmakers to adopt the charged party's explanation." *Id.*

11

To summarize, plaintiffs received written notice of the charges against them and were afforded a disciplinary hearing. At this hearing, they were permitted to have an adviser, and to present witnesses on their behalf. They were further afforded the right to appeal first to the Vice Chancellor's assistant, to the Chancellor via an advisory review board, and ultimately, to the Chancellor. In other words, four decision-making bodies concluded that plaintiffs were guilty of hazing and warranted suspensions. Under the circumstances of this case, plaintiffs have failed to show a reasonable likelihood of succeeding on their procedural due process claims. *See e.g., Pugel*, 378 F.3d 667 (graduate student dismissed for disciplinary reasons failed to state procedural due process when she was given notice of the charges against her, had an opportunity both to present evidence on her behalf and to appeal the discharge decision, and five decision making entities found evidence that she had engaged in misconduct).

### 2. **Remaining Elements to Obtain Temporary Restraining Order.**

Because plaintiffs have failed to show some likelihood of success on the merits, the Court need not address the remaining elements required to obtain a temporary restraining order. The Court does note, however, that plaintiffs also cannot show the remaining elements, (i.e., that there is no adequate remedy at law, and that plaintiffs will suffer irreparable harm). At the hearing, plaintiffs testified that their damages were financial, that is, they lost their financial aid benefits, and that their employment prospects after graduation are now delayed. As noted, defendant Huffman testified that plaintiffs' suspensions prohibited them from attending only SIU, not other universities. As such, the Court

concludes that plaintiffs cannot show irreparable harm or an inadequate remedy at law. Upon review of the pleadings and testimony and exhibits adduced at the hearing, the Court finds that plaintiffs have failed to show the elements required to obtain a temporary restraining order. Accordingly, plaintiffs' motion for temporary restraining order is denied.[1]

### III. Conclusion.

For all of the above reasons, plaintiffs' motion for motion for temporary restraining order (Doc. 4) is **DENIED**.

**IT IS SO ORDERED.**
**DATED: September 16, 2005.**

*s/ James L. Foreman*
**DISTRICT JUDGE**

---

[1] The focus of the hearing was on plaintiffs' alleged violations of due process. Plaintiffs offered no evidence regarding their claims of racial discrimination, breach of contract, or freedom of association violations, thus, plaintiffs' request for a temporary restraining order as to these claims is also denied.